IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2009

**STATE OF TENNESSEE v. LONNIE L. CROSS**

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-07-478     Amy Reedy, Judge**

_____

**No. E2008-02792-CCA-R3-CD - FILED JUNE 17, 2010**

_____

After the appellant, Lonnie L. Cross, led police on a high-speed chase, a Bradley County Criminal Court jury convicted him on two counts of reckless endangerment with a deadly weapon, felony evading arrest with risk to others, driving on a revoked license, and speeding. The trial court sentenced the appellant to an effective sentence of eight years in custody. On appeal, the appellant contends that the evidence was insufficient to support two of his convictions: the evading arrest conviction and one of the reckless endangerment convictions. The appellant also challenges the trial court's reliance on two sentencing enhancement factors. Upon review, we conclude that there was sufficient evidence for the appellant's convictions. We also conclude that, although the trial court erred in its application of one of the enhancement factors, the error was harmless. However, our review of the record reveals that the trial court committed plain error. The appellant's conviction on the reckless endangerment in count three violates constitutional double jeopardy protections. We therefore affirm the judgements of the trial court as to count one, reckless endangerment, and count two, evading arrest. The judgment of conviction in count three is vacated, and the case is remanded to the trial court for merger of the conviction in count three with the evading arrest conviction in count two.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Reversed in Part and Affirmed in Part; Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Larry D. Wright, Cleveland, Tennessee, for the appellant, Lonnie L. Cross.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Steven Bebb, District Attorney General; and Brooklyn Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

The record reveals that the appellant and his girlfriend, Wanda Lynn Moore, decided to spend October 6, 2007, drinking beer at the pool near Moore's house at 1550 Kincaid Road in Bradley County. Not long after they got to the pool, the appellant's son-in-law called and asked him to pick up the appellant's daughter and grandchildren so they could join him at the pool. Although the appellant's driver's license had been revoked, he nevertheless decided to borrow his friend's car to go get them. He took two beers with him for the trip.

Along the way, he passed a Bradley County Sheriff's Deputy, who clocked him going thirteen miles per hour over the speed limit. The deputy followed him, and, when the appellant realized he was the deputy's target, he "panicked" and tried to get away.

A high-speed chase ensued. At various times, the appellant reached speeds between eighty and ninety miles per hour; passed two cars in no-passing zones along blind curves; ran his own car into a ditch but continued to flee; twice nearly hit the deputy's car; swerved into the lane of oncoming traffic in an unsuccessful attempt to avoid another deputy's "stop sticks," which punctured the appellant's tires and ultimately caused one tire to come off completely; and returned to his girlfriend's house only to continue fleeing on foot. When he was finally detained, he had a strong odor of alcohol on his breath; slurred speech; and blurry, bloodshot eyes.

At trial, the State called two witnesses. The first, Bradley County Sheriff's Deputy Travis Smith, testified that he was on patrol when he saw the appellant driving down the street. He clocked the appellant driving sixty-eight miles per hour in a zone where the speed limit was fifty-five miles per hour. Deputy Smith turned on his lights and turned around to pursue the appellant.

Deputy Smith testified that he caught up with the appellant on Keith Valley Road and turned on his siren. The appellant accelerated, and a high speed chased ensued.

While on Keith Valley Road, the appellant drove at speeds between eighty and ninety miles per hour, even though the speed limit on that section of the road was forty-five. The appellant also passed two cars, both in no-passing zones along blind curves. The appellant

then turned onto Union Road, where he accelerated to speeds around sixty miles per hour, twenty-five miles per hour above the posted limit.

Deputy Smith explained that when the appellant came to a sharp turn on Union Road, he lost control of his car and ran into a ditch. Deputy Smith pulled up to the ditched car and told the appellant to stop. The appellant refused. He put his car in reverse and pulled out of the ditch. He then went forward toward Deputy Smith, who backed his own car up to avoid being hit by the appellant. The appellant then stopped, turned around, and headed down Union Road toward Sugar Creek Road. The chase resumed.

The appellant turned onto Sugar Creek Road and eventually onto Hawkins Road. Deputy Smith was familiar with Hawkins Road and knew it was a dead-end, so he tried to block the appellant's exit. The appellant turned around in a large gravel lot at the end of Hawkins Road and headed back toward Deputy Smith. As the appellant approached, Deputy Smith again put his car in reverse out of fear that the appellant would ram him. The appellant maneuvered around him, and the chase continued.

Deputy Smith testified that the appellant returned to Keith Valley Road and turned back toward home. Before the appellant could reach Kincaid Road, Deputy Smith's colleague, Deputy Phillip Reagan, set up "stop sticks" to puncture the appellant's tires. The appellant swerved into the opposite lane to avoid the sticks and nearly crashed into the ditch a second time. Nevertheless, the appellant's right front tire was punctured and went flat. The tire then came off the wheel. However, the appellant did not stop until he pulled into the driveway at 1550 Kincaid Road.

Deputy Smith arrived at the house shortly after the appellant. Deputy Smith testified that he approached the house cautiously because the dust had not yet settled and he was afraid that the appellant might again try to ram him. By that time the appellant had gotten out of his car and was approaching the house on foot. Shortly thereafter, Deputy Smith caught up with him. At Deputy Smith's command, the appellant stopped and eventually got on the ground. Deputy Smith secured the appellant and noticed a strong odor of alcohol on his breath. The appellant had slurred speech and blurry, bloodshot eyes. Given the appellant's behavior up to that point, Deputy Smith decided it would be unsafe to give the appellant the necessary freedom of movement to conduct a field sobriety test. Instead, Deputy Smith attempted to read an implied consent form to the appellant, but the appellant refused to listen and refused to sign the form. Around this time, additional officers arrived to assist Deputy Smith.

The State's second witness was another officer with the Bradley County Sheriff's Department, Phillip Reagan. Deputy Reagan was on patrol in the area when dispatch

informed him of the chase. Deputy Reagan drove closer to the chase and proceeded to a location he suspected the appellant would soon approach. Deputy Reagan testified that he laid down spike strips. As the appellant approached the strips, he swerved into the opposite lane, nearly ditched, and swerved back to avoid some mailboxes. Despite the appellant's evasive action, he still hit the spikes. The appellant did not stop. Deputy Reagan got back to his car and tried to catch up with the appellant and Deputy Smith, which he did at the Kincaid Road house.

The defense presented two witnesses as well. The first, Wanda Lynn Moore, was the appellant's girlfriend. She testified that she resided at the Kincaid Road house and that the appellant had been staying with her. She further testified that the two woke late on the morning of October 6. They made breakfast, and Ms. Moore went to the grocery store where she bought beer. They then went to the nearby pool. Ms. Moore explained that not long after they got to the pool, the appellant's son-in-law called and asked him to pick up the appellant's daughter and grandchildren so they could go swimming. The appellant decided to go, and he picked up two beers to take with him. Ms. Moore told the court that although she had a couple of drinks, the appellant had not had any beer at that point.

The appellant was the defense's second witness. He testified that he had been living at Ms. Moore's house at the time of the offense, and, like Ms. Moore, he recounted that the two had gotten up late that morning. They made breakfast, and, after Ms. Moore returned from the store, they went to the pool with a cooler of beer. The appellant testified that his son-in-law called shortly after they got to the pool and asked the appellant to pick up his daughter and grandchildren so they could join him.

The appellant testified that he was reluctant to go because he did not have a valid driver's license. However, he ultimately decided to go so he could spend some time with his grandchildren. He took two beers, which he intended to drink before he got to his daughter's house because he did not want to drink with his grandchildren in the car.

The appellant testified that, along the way, he opened the first beer and had two sips when he saw a deputy behind him. At first he did not realize that the officer was after him, but he threw the beer to the floor of the car, and it spilled out. He also told the court that once he realized he was the officer's target, he "panicked" and tried to get away. He admitted that he was trying to evade arrest and that he was driving without a license, but he denied that he ever tried to ram Deputy Smith's car.

When the appellant returned to the Kincaid Road home, he tried to walk toward the house. He explained that he was fearful the officers would mistreat him. Because of a variety of ailments, he could not walk very fast. The appellant testified that once he was

taken into custody, he repeatedly demanded a blood alcohol test, which the officers never administered.

A Bradley County Grand Jury indicted the appellant for aggravated assault, felony evading arrest, felony reckless endangerment, his fourth driving under the influence (DUI) offense, driving on a revoked license, and speeding. Notably, count one, charging aggravated assault, alleges the victim to be Deputy Smith. Count two's evading arrest charge refers generically to "innocent bystanders or third parties." The reckless endangerment charge in count three simply refers to the appellant placing "another person" at risk.

At a March 19, 2008 trial, a jury found the appellant not guilty of aggravated assault but guilty of the lesser included offense of reckless endangerment. He was also acquitted of the DUI charge. The jury found him guilty of felony reckless endangerment as charged in count two, felony evading arrest, driving on a revoked license, and speeding. On August 22, 2008, the appellant was sentenced to four years for each reckless endangerment conviction, eight years for evading arrest, and eleven months and twenty-nine days for driving on a revoked license. The appellant's request for alternative sentencing was denied. The trial court enhanced the appellant's sentence, finding that he had a criminal history in addition to that necessary to establish the appropriate sentencing range, had failed to comply with the conditions of a previous sentence involving release into the community, and had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(1), (8) & (10). Although the court indicated that it would have preferred to have the sentences run consecutively, it concluded it did not have the authority to do so in this case. It therefore ordered the sentences to be served concurrently.

This appeal followed, raising essentially two arguments. First, the appellant claims that there was insufficient evidence to convict him on either the evading arrest with risk of death or one of the reckless endangerment with a deadly weapon charges. Second, he asserts that his sentence is excessive.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant first argues that there was insufficient evidence to convict on two of the counts against him.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

With respect to the appellant's arguments regarding his conviction for evading arrest, Tennessee Code Annotated section 39-16-603(b)(1) makes it "unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." A violation of this section is a Class D felony where "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." Id. § 603(b)(3). It is not necessary to show that anyone was actually injured by the appellant's actions. Rather, "[a]ll that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury." State v. Turner, 193 S.W.3d 522, 525 (Tenn. 2006).

The appellant confines his argument to one element of the crime: whether there was sufficient evidence that his conduct created a risk of injury or death to innocent bystanders or third parties. He contends that because he never encountered oncoming traffic and because the two cars he passed did not react to him, the evidence does not support a conviction under Tennessee Code Annotated section 39-16-603(b)(3).

We are not persuaded. The testimony at trial revealed that the appellant led law enforcement on a car chase with speeds reaching between eighty and ninety miles per hour. The appellant twice passed other vehicles by entering the lane of oncoming traffic in no-passing zones along blind curves. The appellant lost control of his vehicle at least once along the way. In addition, once he hit Deputy Reagan's "stop sticks" and lost one of his tires, the appellant continued the chase without the tire. This evidence demonstrates a significant risk of death or injury to anyone that may have been on the roadways, especially those in the cars the appellant passed. The fact that the two cars did not react to being passed does not mitigate the risk the appellant posed to them. Indeed, given the appellant's reckless driving, the mere presence of other cars satisfies this element of the statute. See State v. Travis T.

White, No. M2005-01991-CCA-R3-CD, 2006 WL 2956505, at *3 (Tenn. Crim. App. at Nashville, Oct. 13, 2006) ("The presence of other vehicles on the street during the course of a high speed chase supports a finding that Defendant's conduct placed others in danger."). Thus, the record demonstrates that the appellant's driving posed a significant risk of death or injury to bystanders or third parties.

The appellant's arguments regarding his reckless endangerment conviction fair no better. The Tennessee Code prohibits one from "engag[ing] in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). When "committed with a deadly weapon," reckless endangerment is a Class E felony. Id. § 103(b). A "deadly weapon" is "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id. § 39-11-106(5)(B). That includes motor vehicles, depending upon the manner in which the motor vehicle is used. See State v. Tate, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995).

The appellant argues that, other than the risks to Deputy Smith, which were the basis for the appellant's other reckless endangerment conviction, the record does not demonstrate that there was "another person in imminent danger" as required by Tennessee Code Annotated section 39-13-103(a). He notes that other than the two cars he passed, there were no other cars on the road. Further, he asserts the two cars he passed did not take evasive action. Similarly, there is no evidence that Deputy Reagan perceived any danger to himself. Thus, concludes the appellant, no other person was in imminent danger.

The statute, however, does not require that the appellant's conduct actually placed another person in fear of imminent danger. Rather, the statute prohibits conduct that "places *or may place* another person in imminent danger." Tenn. Code Ann. § 39-13-103(a) (emphasis added). In order for the threat "to be 'imminent,' the person must be placed in a reasonable probability of danger," not just "a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999). The violation therefore depends on the probability of danger rather than another person's perception of danger. The appellant's actions here, passing others at a high speed on a blind curve in a no-passing zone, qualify as actions that may place other people in a reasonable probability of danger. Indeed, unlike the erroneous conviction in Payne where the State "could have met its burden by showing that at the time of the chase another motorist was driving on the street" but did not, id. at 29, here there is ample evidence that other individuals were present during some of the chase. Consequently, the record provided the jury with sufficient evidence to convict on this count as well.

**B. Double jeopardy**

-7-

Although we conclude that the evidence was sufficient to sustain each of the appellant's convictions, we note that the record presents a double jeopardy impediment to affirming the judgments *en masse*. This is not an issue raised by the appellant. However, we may consider it as a matter of plain error. See Tenn. R. App. P. 36(b); see also Tenn. R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (quotation marks omitted).

Under the double jeopardy clause of the Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, no person shall "be subject for the same offence to be twice put in jeopardy of life or limb. . . ." Similarly, article I, section 10 of the Tennessee Constitution states that "no person shall, for the same offence, be twice put in jeopardy of life or limb." These double jeopardy clauses protect an accused from: (1) a second prosecution following an acquittal; (2) a second prosecution following conviction; and (3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn.1996). The present case involves the third category.

In Tennessee, whether two offenses are the "same" for double jeopardy purposes depends upon a close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances. State v. Black, 524 S.W.2d.913, 919 (Tenn. 1975). This analysis is guided in part by the application of the test announced in Blockburger v. United States, 284 U.S. 299, 304 (1932). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not. Black, 524 S.W.2d at 919 (quoting Blockburger, 284 U.S. at 304). In order to determine if double jeopardy attaches, our supreme court devised a four-part test: (1) a Blockburger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac v. State, 505 S.W.2d 237 (Tenn. 1973), of the evidence used to prove the offenses; (3) a consideration of whether there were

multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. See Denton, 938 S.W.2d at 381. None of these steps is determinative; the results of each must be weighed and considered in relation to each other. Id.[1]

This court has previously applied the Denton test in the context of simultaneous convictions for Class D felony evading arrest with risk of injury and Class E felony reckless endangerment with a deadly weapon, with differing results. See State v. Johnny C. Menifee, No. M2005-00708-CCA-R3-CD, 2006 WL 2206067 (Tenn. Crim. App. at Nashville, July 31, 2006) (finding no double jeopardy violation); State v. Jimmy Lee Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543 (Tenn. Crim. App. at Knoxville, Apr. 17, 2001) (finding a potential double jeopardy violation and remanding for further proceedings).[2] With respect to the first step in the Denton analysis, both Menifee and Cullop conclude that there is not an identity of elements under the Blockburger test. See Menifee, M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *7; Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *6. Tennessee Code Annotated section 39-13-103(a) defines reckless endangerment as "recklessly engag[ing] in conduct that places or may place another person in imminent danger of death or serious bodily injury." The offense is a Class E felony if it is "committed with a deadly weapon." Tenn. Code Ann. § 39-13-103(b). A person commits the Class D felony version of evading arrest when, "while operating a motor vehicle on any street, road, alley or highway in this state, [he] intentionally flee[s] or attempt[s] to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop" and "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." Id. § 39-16-603(b). These statutes thus differ in at least two respects. First, "reckless endangerment requires a deadly weapon, while evading arrest requires the use or operation of a motor vehicle." Menifee, M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *7. Second, "evading arrest requires flight or an attempt to elude a law enforcement officer upon a signal to stop," whereas reckless endangerment does not. Id. The two statutes therefore do not have an identity of elements, as described by Blockburger.

---

[1] However, "if the offenses are the 'same' under Blockburger, the federal constitutional double jeopardy protections have been violated and the inquiry may end." State v. Hayes, 7 S.W.3d 52, 55 (Tenn. Crim. App. 1999).

[2] Similarly, this court has addressed double jeopardy concerns in at least two cases involving Class D felony evading arrest and reckless driving. See State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568, 1999 WL 632301, at *6 (Tenn. Crim. App. at Nashville, Aug. 19, 1999) (concluding without its own Denton analysis that dual convictions violated double jeopardy protections); State v. Kerry D. Garfinkle, No. 01C01-9611-CC-00484, 1997 WL 709477, at *4-5 (Tenn. Crim. App. at Nashville, Nov. 7, 1997) (concluding with a brief Denton analysis that the two convictions violated double jeopardy).

The second step in the Denton analysis, the comparison of the evidence relied upon for conviction in the case, weighs heavily in favor of finding a double jeopardy violation. This step appears to be one of the critical distinctions between Menifee and Cullop. In Menifee, the defendant led police on a high-speed chase down a public street and then into the parking lot of a shopping center. Id. While on the street, the defendant hit one third-party motorist. Id. That individual testified at trial. Id. The defendant almost hit another motorist on the street as well. Id. When the defendant reached the parking lot, he then nearly hit one of the officers pursuing him. Id. The proof thus presented distinct acts within the single criminal episode, and those acts had different victims: the third-party motorist was the victim in the evading arrest charge; the officer was the victim in the reckless endangerment charge. Id. In Cullop, by contrast, "[b]oth offenses were established by proof of the same course of conduct—the defendant's high-speed flight . . . during which he exhibited erratic driving that endangered other drivers." No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *6. It does not appear that the State specifically delineated victims for each charge.

The record before us is much more like Cullop than Menifee in this respect. At the outset we note that, because he is the specifically identified victim of the aggravated assault charge and subsequent reckless endangerment conviction in count one, Deputy Smith cannot be the victim in count three's reckless endangerment charge nor can he be the victim in count two's evading arrest charge because he is not an "innocent bystander[] or other third part[y]." Tenn. Code Ann. § 39-16-603(b)(3). The record does not show that Deputy Reagan was the victim in either count. Like Deputy Smith, he does not qualify as an innocent bystander or third party under Tennessee Code Annotated section 39-16-603(b)(3). Moreover, nothing in the record indicates that Deputy Reagan was placed in any danger. Therefore, contrary to the State's position on appeal, he cannot be the victim in the reckless endangerment charge. We are left with the occupants of the other vehicles on the road as the possible victims. However, the drivers themselves did not testify nor is there any evidence of anything unique about the individual encounters. Instead, all we have is Deputy Smith's general testimony that the appellant passed two cars in no-passing zones on blind curves. Consequently, as was the case in Cullop, the same proof was used at trial to establish both convictions.

The third step of the Denton analysis, determining whether the charges show multiple episodes of criminal conduct or multiple victims in a single episode of criminal conduct, also weighs heavily in favor of a double jeopardy violation. Again, the differences in Menifee and Cullop are stark, and again, this case is much more like Cullop. As noted above, in Menifee the State presented specific witnesses who were victims of the defendant's conduct. M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *7. The two motorists on the street were identified as the victims of the defendant's evading arrest charge whereas the officer in the parking lot was the victim in the reckless endangerment charge. Id. Thus in Menifee, "by

-10-

presenting distinct proof of acts against specific victims, the State established that this was not one continuous episode; rather, the proof established discrete acts and separate victims which were capable of being separated into multiple offenses." Id. In Cullop, on the other hand, neither the indictments nor the State's evidence delineated specific victims for the two charges. No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *7. Furthermore, the Cullop panel noted that because both statutes prohibit courses of conduct rather than individual acts (reckless endangerment prohibits reckless conduct that places "another person" in danger; evading arrest prohibits flights that create risk to "innocent bystanders"), there can be multiple victims of each. See id. (citing State v. Ramsey, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995) (concerning reckless endangerment)). Based upon the lack of specific evidence regarding each victim, the charges appeared to concern multiple victims of a single episode of criminal conduct. Id.

A review of our facts indicates, again, that this case is more like Cullop than Menifee. As noted above, the only possible victims in this case are the occupants of two cars that the appellant passed. The evidence concerning those cars was limited to Deputy Smith's general testimony that the appellant passed two cars. As in Cullop, the State did not further delineate the victims of the separate charges. The State cannot, without more evidence than this record provides, claim two separate offenses because the appellant passed two cars. Moreover, the record does not suggest the State even tried. We thus conclude that, on the record before us, this case involves multiple victims in a single episode of criminal conduct.

The final step in the Denton analysis is to determine whether the statutes serve different purposes. The panels in Menifee and Cullop diverged on this point as well. Both agreed that the purpose of the reckless endangerment statute was to combat conduct that created a risk of death or injury to others. See Menifee, M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *8; Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *7. The Cullop panel, however, concluded that the legislature sought to combat the same conduct in Tennessee Code Annotated section 39-16-603(b)(3), where it raised the offense classification for conduct that "creates a risk of death or injury to innocent bystanders or other third parties." See Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *7 (citing State v. Kerry D. Garfinkle, No. 01C01-9611-CC-00484, 1997 WL 709477 (Tenn. Crim. App. at Nashville, Nov. 7, 1997)). The panel in Garfinkle reasoned that, although the two statutes appear to have different purposes, the purpose in *elevating* a count of evading arrest to a Class D felony is to—like the reckless endangerment statute—protect the public from those that drive recklessly. See Garfinkle, No. 01C01-9611-CC-00484, 1997 WL 709477, at *5. The Cullop panel agreed. See Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at 7. It did so, however, over the dissent of a member of this panel, who concluded that "the gravamen of the evading arrest offense is the attempt to elude police while in a vehicle which places others at risk." Id. at 14 (Tipton, J., concurring in part, dissenting in part). The panel

-11-

in Menifee agreed with Judge Tipton. See No. M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *8. It noted that the two provisions were located in separate chapters of the code—one concerning the administration of law enforcement and one concerning offenses against individuals. Id. The elevated evading arrest statute, it concluded, sought to combat a particular type of pernicious obstruction of law enforcement. Id.

Although the Garfinkle panel raises a strong point, we agree with the conclusion reached in Menifee that the two statutes serve different purposes. The prohibition on evading arrest "addresses the threatened harm to the public interest of obstructing a law enforcement officer in the discharge of any legal duty." Menifee, M2005-00708-CCA-R3-CD, 2006 WL 2206067, at *8 (quotation marks and ellipses omitted). The elevated felony for recklessly fleeing in a motor vehicle is designed to "address[] the public harm when the act of evading arrest creates a risk of death or injury to innocent bystanders or other third parties." Id. In contrast, reckless endangerment, which is codified in the chapter regarding offenses against persons, "addresses threatened harm to the individual by prohibiting conduct which may place another person in danger of death or serious bodily injury with a deadly weapon." Id. (quotation marks, citations, and ellipses omitted). Thus, we conclude the purposes of the two statutes are different.

Having proceeded through the Denton framework, we conclude that, on the record before us, the appellant's convictions under counts two and three violate the protections against double jeopardy. Although the statutes require proof of different elements and appear to serve different goals, the way the prosecution was carried out in this case overwhelmingly demonstrates that the appellant is being punished for the same conduct in both counts. The same evidence led to both convictions, and that evidence reveals that the prosecution of these two counts concerned a single episode of criminal conduct that involved multiple victims. The appellant has thus been impermissibly given multiple punishments for the same offense. See Denton, 938 S.W.2d at 381.

This violation of the appellant's double jeopardy protections easily rises to the level of plain error. As explained above, the record clearly establishes that a clear and unequivocal rule of law has been breached and that the appellant has been adversely affected. See Adkisson, 899 S.W.2d at 641-42. Nothing indicates that the appellant waived this issue for tactical reasons. See id. And consideration of this issue is necessary to do substantial justice. See id. We therefore conclude that the trial court committed plain error in entering the judgment in count three. As a result, we vacate the judgment of conviction in count three and remand the case to the trial court with instructions to merge the conviction in count three into the evading arrest conviction in count two. See Cullop, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *8.

## C. Sentencing

We now turn to the appellant's argument that the trial court erred at sentencing. As noted above, the trial court relied on three enhancement factors in arriving at its sentence for the appellant. In particular, the trial court found that the appellant (1) had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) had failed to comply with the conditions of a sentence involving release into the community; and (3) had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. §§ 40-35-114(1), (8) & (10). The appellant asserts that the trial court erred in relying on the latter two enhancements.

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant first argues that the trial court relied on an erroneous factual belief about the sequence of the appellant's prior convictions to conclude they trigger the enhancement for compliance with conditions of release. In particular, he contends that the court erred because it cited a 2007 DUI conviction as the basis for finding he had violated the conditions of a probation order from 1992. Because he was not convicted of the DUI charge until after the expiration of a period of probation, he argues, that conviction cannot be used as a basis for applying this enhancement.

The appellant's argument misses the mark. The presentence report reveals that he has a December 1992 conviction for incest. He was sentenced to four years in custody and four years of probation. In 1997, the appellant was convicted of DUI for an incident that occurred in November 1996. Our reading of the presentence report thus indicates that the probationary period for his 1992 conviction did not end until after his November 1996 DUI. It is possible

-13-

that the trial court cited the wrong DUI conviction—the appellant has several—but the record reveals that the 1997 conviction was a violation of his probation for the incest conviction. Therefore, the trial court did not error in relying on this factor.

The appellant next argues that the trial court erred in enhancing his sentence based on his lack of hesitation about committing a crime when the risk to human life was high. Specifically, he argues that the record lacks an evidentiary basis from which to draw that conclusion, that the factor essentially duplicates the necessary elements of the underlying crime, and that the facts upon which the trial court relied were not found by the jury and therefore the trial court's reliance on those facts violated his constitutional right to trial by jury.

The appellant's argument regarding the duplication of proof is well-taken. Tennessee Code Annotated section 40-35-114(10) allows a trial court to enhance a sentence if "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." "The determinative language of this factor is 'the risk to human life was high.'" State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). The appellant is correct that the same proof used to convict the appellant of evading arrest with risk of death and reckless endangerment with a deadly weapon cannot be used to support the enhancement. The trial court therefore erred in relying on this enhancement.

We conclude, however, that the error was harmless. See Tenn. R. App. P. 36(b). As an initial matter, the sentencing guidelines under which the trial court relied upon provide that the enhancement factors are advisory. See Tenn. Code Ann. § 40-35-210(c); see also State v. Banks, 271 S.W.3d 90, 144-45 (Tenn. 2008). Further, it is clear from the record that the trial court would not likely have altered its sentence in the absence of this enhancement. As discussed above, the trial court relied on two other enhancements that justify an increased sentence. Moreover, the trial court considered the sentencing principles and all relevant facts and circumstances in coming to its decision and even indicated its desire to give a longer sentence by making the individual sentences consecutive. Therefore, the error here did not "more probably than not affect[] the judgment or . . . result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court, except for the judgment of conviction in count three. We vacate the conviction with respect to count three (reckless endangerment with a deadly weapon). This case is remanded to the trial court with instructions to enter a judgment reflecting that count three merges with

the conviction in count two (evading arrest with risk of death).  The judgments of the trial court are affirmed in all other respects.

_____

NORMA McGEE OGLE, JUDGE